CLERK'S OFFICE
AT [illegible] VA

MAR 2 8 2006

JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ROY M. TERRY, JR., et al.,<br><br>    *Plaintiffs,*<br><br>v.<br><br>VIRGINIA M. JUNE,<br><br>    *Defendant.* | CIVIL ACTION NO. 3:03CV00047<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Before the Court is the Plaintiffs' (the "Receiver") Verified Motion for Partial Summary Judgment, filed on August 25, 2005. In this motion, the Receiver moves the Court pursuant to Fed. R. Civ. P. 56 to enter partial summary judgment against Virginia M. June ("the Defendant") as to the amount of her disgorgement obligation owed to the Receiver. The Defendant filed a response to the Receiver's motion on March 24, 2006, adopting the arguments she made as Guardian for her defendant father in response to a similar motion in the related case *Terry v. Virginia June, Guardian for Robert F. June, Sr.*, Civil Action No. 3:03CV00052.[1] The matter is, therefore, ripe for the Court's determination. For the reasons detailed below, the Court will grant the Receiver's Motion for Partial Summary Judgment, finding that the Defendant received a total

---

[1] In that case, the Court granted the Receiver's Motion for Partial Summary Judgment Verified on December 16, 2005. *See Terry v. Virginia June, Guardian for Robert F. June, Sr.*, Civil Action No. 3:03CV00052 (document # 148).

1

of $126,800 in Vavasseur-related profit distributions.

I. Facts

The factual background surrounding the Ponzi scheme operated by Terry L. Dowdell is familiar to the Court. Beginning in April 1998 and continuing through 2001, Dowdell operated a classic Ponzi scheme through a Bahamian based corporation known as the Vavasseur Corporation ("Vavasseur"). Dowdell marketed Vavasseur to investors as a business entity involved in trading medium-term debentures and other private bank debt. To perpetuate his scheme, Mr. Dowdell would simply use the money contributed by the newest investors to pay earlier investors their promised "profits." He would then misappropriate the remaining funds, transferring at least $29 million to business associates, family, and friends. In January 2001, the Securities and Exchange Commission ("SEC"), later joined by the Federal Bureau of Investigation, initiated an investigation into the Vavasseur program. The investigation to date has identified at least seventy-six direct investors, with an undetermined number of subinvestors, who contributed to the fraudulent investment program. While the exact amount of investors' loss is as yet unknown, it is estimated to exceed of $121 million.

To facilitate recovery of these losses, Judge James H. Michael, Jr., the presiding United States District Judge at the time, appointed Roy M. Terry, Jr. and the law firm of DuretteBradshaw PLC as Receiver for Terry L. Dowdell and his various business entities by Orders entered July 12, 2002 (Terry L. Dowdell, Dowdell, Dutcher & Associates, Inc. and Emerged Market Securities, DE-LLC), September 17, 2002 (Authorized Auto Services, Inc.), and February 18, 2003 (Vavasseur Corporation). On May 14, 2003, Judge Michael entered an Order reappointing Roy M. Terry, Jr. and DuretteBradshaw PLC as Receiver as to Terry L. Dowdell

and all of the aforenamed business entities.

The Receiver filed this action against the Defendant on May 22, 2003, asserting claims of unjust enrichment and fraudulent conveyance. The Receiver claims that the Defendant was a Vavasseur investor and that the amount of her investment principal was repaid in full. He also asserts that the Defendant received substantial "earnings" on her Vavasseur investment and that she knew or should have known that these "profits" were the proceeds of a scheme to defraud subsequent investors rather than genuine investment profits.

The Motion for Partial Summary Judgment before the Court relates to the precise amount of these Vavasseur-related "profits" received by the Defendant. The Receiver moves the Court to enter partial summary judgment in his favor as to two issues of fact: (1) that the Defendant has conceded to receipt of $92,800 in Vavasseur-related profit distributions; and (2) that the $34,000 (before wire fees of $27.00) received by the Defendant on or about August 15, 2001 was a Vavasseur-related profit distribution.

The Defendant has admitted that she received $92,800 in Vavasseur profits. However, she does not concede that she received a Vavasseur-related profit distribution in the amount of $34,000.00 on or about August 15, 2001. What the Defendant does admit is that she received a payment of approximately $34,000.00 on August 15, 2001 from VRJ, Ltd., which she describes as a tax shelter company set up in the Bahamas by her brother, Robert June, Jr. She denies that this payment was made with Receivership property. The only question for the Court, therefore, is whether the Receiver has presented sufficient evidence tracing the $34,000.00 distribution back to Vavasseur to entitle the Receiver to summary judgment on this point.

The evidence surrounding the origins of the August 15, 2001 payment of $34,000 (less

3

transfer fees of $27.00) to the Defendant is as follows. On June 8, 1999, the Defendant executed a Discretionary Investment Management Agreement with Vavasseur Corporation, giving Vavasseur the authority to invest or trade any cash, securities, or other principal in the Defendant's account, subject to the terms in the Agreement. The Defendant received by wire transfer a return of her $100,000.00 Vavasseur investment principal on March 21, 2001. (Pls.' Mot. Summ. J. Ex. D). The next day, on March 22, 2001, the Defendant wired $100,000.00 to account number 20619 at Banque SCS Alliance (Nassau), Ltd. ("Banque SCS Alliance"), the account of VRJ, Ltd. (Pls.' Mot. Summ. J. Ex. F). On August 15, 2001, the Defendant received a wire transfer of $33,973.00 ($34,000.00 less a $27.00 transfer fee deducted by the originating bank) from Banque SCS Alliance, via an intermediary bank in New York. (Pls.' Mot. Summ. J. Ex. G). Finally, on December 20, 2001, the Defendant received a wire transfer of $99,965.00 ($100,000.00 less a $35.00 fee deducted by the originating bank) from Banque SCS Alliance, via an intermediary bank in New York. The Receiver and the Defendant are in dispute over whether the $34,000 payment of August 15, 2001 involved Vavasseur funds.

In its motion for partial summary judgment, the Receiver claims that the $34,000 transfer can be traced back to Vavasseur. The Receiver begins by characterizing the bank account of VRJ, Ltd. at Banque SCS Alliance as a mere conduit for the Defendant's investments in Vavasseur. To this end, the Receiver produces evidence that Robert June, Jr., a close associate of Dowdell involved in recruiting investors for Vavasseur, introduced the Defendant to the Vavasseur program and created VRJ, Ltd., which had the Defendant and her minor children as its beneficial owners. The Receiver further presents evidence that Robert June, Jr. used VRJ, Ltd. as a conduit for his own Vavasseur investments. (Pls.' Mot. Summ. J. Ex. J). The Receiver

alleges that VRJ, Ltd. served as a conduit for the Defendant's investments as well, the key being VRJ, Ltd.'s account at Banque SCS Alliance, account number 20619, which Robert June, Jr. had set up. The undisputed evidence shows that the Defendant transferred $100,000.00 to this account just one day after receiving back her investment principal on March 21, 2001. The Receiver finds this to be suspicious in light of statements made by Dowdell about reinvestment of U.S. investor money at that time. According to Dowdell's deposition testimony of June 16, 2004, the money that was returned on March 21, 2001 was immediately brought back into the program through overseas accounts in order to fool the SEC into believing that Vavasseur had dropped its U.S. investors. (Pls. Mot. Summ. J. Ex. S). Dowdell also stated that he explained how to do this to Robert June, Jr., who was in turn responsible for coordinating this reinvestment for his "group." (Pls. Mot. Summ. J. Ex. S.). The Defendant admits in affidavit that she reinvested the $100,000 in VRJ, Ltd. on Robert June, Jr.'s recommendation.

To prove that this reinvestment was ultimately connected to Vavasseur, the Receiver produces as evidence a portion of Vavasseur's address book, which contains an entry for VRJ, Ltd., which was to receive payments at account 20619 at Banque SCS Alliance in Nassau. (Pls.' Mot. Summ. J. Ex. M). This, of course, was the same account to which the Defendant invested $100,000.00 on March 22, 2001 and from which she received $34,000.00 on August 15, 2001. The Receiver argues that records regarding the payment and receipt of $34,000 in August 2001 prove conclusively the link between Vavasseur, VRJ, Ltd., and the Defendant. Vavasseur records provided by Dowdell to the SEC show a $34,000 distribution on August 8, 2001 to "Virginia June." (Pls. Mot. Summ. J. Ex. N). Following this is the record of the Defendant's August 15, 2001 receipt of $33,973.00 ($34,000 minus a $27.00 wire fee) from Banque SCS

Alliance, via an intermediary bank in New York. (Pls. Mot. Summ. J. Ex. G). The Defendant admits that this payment was from VRJ, Ltd.'s account. Finally, the Receiver points out that the Defendant's 2001 federal tax return reports $44,618 of "Vavasseur Income" and argues that this had to have included the $33,973 payment. The Receiver arrives at this conclusion by noting that adding this amount to the other two profit distributions that the Defendant admits receiving in 2001[2] and taking into account a $20 variance for wire transfer fees results in exactly $44,618 in Vavasseur income for the year.

The Defendant admits having invested in VRJ, Ltd., but denies that this investment was in any way related to Vavasseur. The Defendant states that she made this investment on the recommendation of Robert June, Jr. and that it was her understanding that these investments were not connected to Vavasseur. The Defendant goes on to argue that any assertion of a link between VRJ, Ltd. and Vavasseur is sheer speculation, pointing out that Dowdell testified in deposition that VRJ, Ltd. was an existing company which was already funded before receiving any Vavasseur transfers. (See Dep. of Terry Dowdell, June 16, 2004 at 122). Despite arguing that the Receiver could not prove that the $34,000 payment came from Vavasseur, the Defendant offers no evidence or suggestion as to where else the funds might have come from. Furthermore, the Defendant takes issue with the Receiver's reliance on Exhibit N, which the Receiver claims shows a $34,000 distribution to the Defendant. She argues that this entry does not have the word "DISTRIBUTION" next to it, unlike other distributions that the Defendant acknowledges having received. The Defendant asserts that the lack of a "distribution date" means that this money was

---

[2] The Defendant admits to having received profit distributions of $2,125 on February 7, 2001 and $8,500 on March 7, 2001.

not distributed, but was instead retained for reinvestment, as Dowdell himself explained in deposition.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Issues of material fact are genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's function is "not . . . to weigh the evidence and determine the truth of the matter . . . [but to] determin[e] whether there is a need for a trial." *Id.* at 249-50. On a motion for summary judgment the court must view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest on its pleadings, but rather must present probative and material evidence which would permit a trier of fact to find in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Summary judgment may also be appropriate as to particular issues in a case, as Fed. R. Civ. P. 56(a) permits a claimant to move for summary judgment as to all or any part of his claim. Such adjudications "[serve] the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Fed. R. Civ. P. 56, Advisory Committee's Note.

## III. Discussion

Having thoroughly considered the record, the Court finds that the Receiver is entitled to summary judgment as to both of the issues raised. Certainly, summary judgment in favor of the Receiver is proper as to the Defendant's admitted receipt of $92,800 in Vavasseur-related profit distributions. The Receiver is similarly entitled to summary judgment establishing that the $34,000 payment on August 15, 2001 involved Vavasseur funds because there is no genuine question of fact as to this issue.

At its core, the Defendant's argument against entry of summary judgment on the issue of the $34,000 payment is that the Receiver cannot prove beyond surmise and speculation that VRJ, Ltd. received this money from Vavasseur because he has not produced direct evidence detailing a Vavasseur-to-VRJ, Ltd. transaction of this amount. While that may be the case, the Receiver has proffered considerable documentary evidence to show that the $34,000 ultimately came from Vavasseur. In short, that evidence shows that the Defendant, the sister of Dowdell's close associate, Robert June, Jr., received back her entire investment principal of $100,000 on March 21, 2001, only to reinvest that entire amount in VRJ, Ltd. the very next day. Further increasing the suspicious nature of this quick turnaround is the fact that Dowdell himself testified that the monies returned on March 21, 2001 were immediately reinvested to elude the SEC and that Robert June, Jr., who the Defendant admits recommended the reinvestment, was responsible for bringing the returned money back to Vavasseur through overseas vehicles. With respect to the $34,000 distribution, Dowdell's testimony and payments spreadsheet for the Defendant establish that VRJ, Ltd. was Robert June, Jr.'s account and that a $34,000 payment was entered on August 8, 2001. Within a week of that, the Defendant received a distribution of the same amount (less transfer fees) from VRJ, Ltd. Placed in context, the timing of Vavasseur's $34,000 payment

scheduled to the Defendant and the Defendant's receipt of the same amount goes beyond being merely suspicious. The Defendant seeks to allay that suspicion by pointing to Dowdell's testimony that VRJ, Ltd. had some funding prior to receiving Vavasseur transfers, but she does not produce any documentation evidencing such funding or indicating where the $34,000 came from or why it went out to her when it did. Such a defense is clearly insufficient for surviving summary judgment, a point in the proceedings where the Defendant must present probative and material evidence rather than relying on the pleadings. *See Celotex*, 477 U.S. at 324.

The Court also finds that the Defendant's 2001 tax return provides further corroboration of the Vavasseur origins of the $33,973 transfer because, subject to a $20 variance, the amount of Vavasseur income reported is the exact amount of the 2001 distributions admitted by the Defendant plus the contested $33,973.

## IV. Conclusion

In conclusion, the Court will GRANT the Receiver's Verified Motion for Summary Judgment, finding that the Defendant received $126,800 in Vavasseur-related profit distributions, which includes the admitted receipt of $92,800 in Vavasseur funds and the $34,000 payment of August 15, 2001. An appropriate order this day shall issue.

The Clerk of the Court hereby is directed to send a certified copy of this Opinion to all counsel of record.

ENTERED: *[signature]*
United States District Judge

*3/28/06*
Date